UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADAM REED,

    Plaintiff,

Case No. 1:16-CV-572

v.

HON. PAUL L. MALONEY

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
                                 /

**OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.

**STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v.*

*Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was thirty-one years of age on the date of the ALJ's decision. (PageID.37, 118, 131.) He previously obtained a GED and has been employed as a material handler and as an assembler / production. (PageID.64, 68.) Plaintiff applied for benefits on December 19, 2012, alleging that he had been disabled since January 30, 2009, due to depression and severe social anxiety. (PageID.118, 131, 238–250.) This application was denied upon initial review on June 11,

2013, after which time Plaintiff requested a hearing before an ALJ. (PageID.149–174.) On September 18, 2014, Plaintiff appeared with his counsel before ALJ James Prothro for an administrative hearing at which time Plaintiff, Dr. Jeffrey Andert (a psychological expert), and a vocational expert (VE) all testified. (PageID.58–105.) On December 12, 2014, the ALJ issued his written decision, concluding that Plaintiff was not disabled. (PageID.37–57.) On March 22, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.27–32.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

**ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.20(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

3

the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Prothro determined Plaintiff's claim failed at step five. At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 30, 2009, Plaintiff's alleged disability onset date. (PageID.42.) At step two, the ALJ found that Plaintiff suffered from the severe impairments of: (1) anxiety disorder NOS; (2) dysthymic disorder (mild depression); and (3) an adjustment disorder. (PageID.43.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.43–47.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments to perform:

> a full range of work at all exertional levels but with the following nonexertional limitations: limited to simple work, meaning one to two step tasks; occasional public contact and he may not perform fast paced work.

(PageID.47.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (PageID.49.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform work in the following representative jobs: garment sorter (1,150 regional and 50,000 national

positions), folder of garments (1,200 regional and 51,000 national positions), and sorter of agricultural products (1,100 regional and 50,000 national positions). (PageID.99–104.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.51.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from January 30, 2009, through December 12, 2014, the date of decision. (PageID.51.)

## DISCUSSION

Plaintiff's sole issue for review is the ALJ's treatment of Dr. Andert's opinions from the administrative hearing and as contained in a Mental RFC worksheet.

At the hearing, Dr. Andert testified that Plaintiff suffered from the impairment of a systemic disorder as well as from an anxiety disorder. (PageID.89–90.) He further testified that none of these impairments would meet or equal a listing. (PageID.90.) In regards to the "paragraph b" criteria, Dr. Andert found that Plaintiff had a moderate restriction in activities of daily living, a marked restriction in social functioning, and moderate restrictions in concentration, persistence, and pace. There were no episodes of decompensation. (PageID.91–92.) The doctor then summarized his findings as contained in a mental RFC worksheet. Specifically the doctor found that Plaintiff had limitations ranging from "not significantly limited" to marked in twenty separate categories encompassing the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaption. (PageID.92–94, 562–563.) The ALJ then asked the doctor to offer his opinion regarding Plaintiff's RFC. Dr. Andert responded that:

> The claimant has the intellectual capacity to understand even detailed and complex work. However, I think you would have difficulty performing that on a routine basis, so in my opinion, he would be

5

limited to work with one- to three- step tasks. [INAUDIBLE] that he would be able to perform on a consistent basis. He would require a low-stress environment. In other words, he would not be able to tolerate a work environment that was fast pace, such as an assembly line, and I don't think he would respond – be able to handle a high emphasis on quotas in terms of his productivity. His social functioning, as you saw in my readings, I think is the primary area of limitation for him, and in that regard, I think he would be precluded from contacts with the general public. He would have only minimal capacity to interact with coworkers and work in tandem or in groups of, say, 10 percent of the time or less. And I think his contact with supervisors would have to be occasional, 30 percent of the time or less. And he may require some occasional unscheduled breaks to recover from episodes of anxiety. It's difficult to predict how frequently that might be, but it could be on a weekly basis. He may require an additional time. To recover from an episode of anxiety.

(PageID.94–95.) Plaintiff stated his restrictions dated back to 2009, but because the first documentation of Plaintiff's complaints was dated December 2012, the doctor stated he could only opine on Plaintiff's condition as of the December 2012 date. (PageID.96.)

Plaintiff's counsel next questioned the expert regarding the time Plaintiff might be off task:

> Q. Dr. Andert, you mentioned the unscheduled breaks. You said it would be hard to quantify that. Of course, what we're looking for is quantification. Given the records that we have here, can you give us any dice? I mean, we're talking about something that would last – breaks, is a break of five minutes, is a break an hour? Is it – what kind of time frame are we looking at?
>
> A. It is difficult to predict. We can assume that the best predictor is behavior or episodes that are documented, and I think the claimant developed a life style of pattern where he'll avoid situations that would cause anxiety, so if you were in a work setting with the restrictions that I indicated where you just have very minimal social contact, I think that would reduce the likelihood of those types of episodes, so that's – given the history that's described by his counselors, it certainly could

> have occurred on a weekly basis, [INAUDIBLE] anxiety he
> has would probably require a period of 15 to 30 minutes to
> recover from that panic attack.

(PageID.96–97.) After hearing this testimony, the ALJ asked Dr. Andert to sign and submit the completed RFC worksheet. In addition to the twenty check-mark questions, the worksheet also asked the doctor to elaborate on the preceding capacities and to explain his conclusions in narrative form, as well as to include any information which clarified Plaintiff's limitation or function. (PageID.564.) In that section, Dr. Andert wrote that Plaintiff's combined impairments restricted him to one to three step tasks. Social functioning was Plaintiff's primary area of limitation, and the doctor indicated that Plaintiff was precluded from general public contact, and that contact with co-workers and supervisors was limited to only ten percent of the time or less. (PageID.564.)

After hearing this testimony and receiving the completed worksheet, the ALJ issued his written decision. In it, the ALJ discussed Dr. Andert's opinions regarding Plaintiff's RFC at three separate points in his decision. First, in finding that Plaintiff did not meet or equal a listing, the ALJ noted that:

> During the hearing the testimony from Dr. Andert was not entire clear
> during one portion. Dr. Andert stated that the claimant could benefit
> from "extra breaks" to recover from panic attacks. Dr. Andert was
> asked to expound on the term extra breaks and he did not make that
> section entirely clear. Specifically, he could not quantify the amount
> of breaks. That factored into the information at the end of the hearing
> as the vocational expert took this to mean that the breaks would not
> enable an individual to work at any occupation. However, at exhibit
> 14F, the written summary from Dr. Andert settled the issue of extra
> breaks and the recovery from panic attacks. At page 3 of exhibit 14F,
> Dr. Andert mentions everything that is supported based upon his
> expert opinion. The reference to extra breaks, or number of breaks,
> or the period of time this individual would miss at the job are settled
> based upon exhibit 14F. The undersigned does approximate the
> medical expert's testimony regarding simple work and limited public
> contacts. Even with these stringent classification of the restrictions

7

the vocational expert ultimately provided three different jobs and occupations that are within the residual functional capacity adopted in this matter.

(PageID.44.) Later in his step three discussion, the ALJ stated:

> Dr. Andert offered testimony at the hearing and he clarified his findings at exhibit 14F . . . . As is mentioned elsewhere in this order, the testimony from Dr. Andert at the hearing was somewhat incomplete as he could not immediately quantify the issue of extra breaks. Dr. Andert did clearly explain that no listing[s] were met or equaled. When Dr. Andert could not immediately provide a number or percentage for the extra breaks, the vocational expert grasped tat that and moved forth to testify how no jobs existed. The undersigned has now clarified this discrepancy by summarizing exhibit 14F and assigning great weight to Dr. Andert's written explanation. The information at exhibit 14F is due much more weight than the course of events at the hearing due to that sequence. A proper view of the evidence is that the anxiety, and panic attacks, can allow for a type of work that has limited social contact. That is of course essentially the same as the restriction to no-fast paced work. The RFC from the medical expert at the hearing is assigned less weight and the information at exhibit 14F, as well as that from the DDS source, is assigned greater weight because of that confusion.

(PageID.45.) Finally, at step four, the ALJ repeated his assertion that:

> Dr. Andert's written summary at exhibit 14F is assigned greater weight than Dr. Andert's statements made during the hearing due to a lack of clarity on the issue of how many extra breaks or breaks this claimant could require. To reiterate a point made earlier in this order, the detailed RFC from Dr. Andert mentioned how this claimant "may need" to take extra breaks in order to recuperate from the panic attacks. The claimant's attorney was fixated on this aspect of the case and asked Dr. Andert to quantify the breaks and Dr. Andert mentioned that it was hard for him to estimate. When this was ultimately presented to the vocational expert by the undersigned in one of the hypothetical examples, the vocational expert quickly stated that no jobs existed for a person with this restriction. The vocational expert clearly would have required a quantification of the number or level of extra breaks and that was not something that Dr. Andert was able to summarize expeditiously.

(PageID.48.)[2] Plaintiff argues that the ALJ's RFC determination is faulty because the ALJ's analysis of Dr. Andert's opinions, specifically as it relates to the time he would be off task and his ability to interact with coworkers and supervisors, is unsupported by substantial evidence. The Commissioner argues there is no error here because Dr. Andert's testimony regarding the time Plaintiff would be off task was speculative, and the doctor's final opinion did not contain any restrictions for the time Plaintiff would be off task. While the Court agrees Dr. Andert's testimony was speculative, the Court concurs with Plaintiff that this matter must be remanded.

A claimant's RFC represents the "most [a claimant] can still do despite [the claimant's] limitations." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014.); *see also* SSR 96-8p, 1996 WL 374184 at *1 (July 2, 1996) (stating a claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regulation and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule").

---

[2] The questioning of the VE on Dr. Andert's opinion regarding Plaintiff's RFC appears as follows:

> Q. And then next, we have the RFC that Dr. Andert gave, so this would be based on – a new [hypothetical] based on that. So the hypothetical person, he would be limited to one- to three- step tasks in a low-stress environment, not able to do fast-paced work, no production quotas, having no contact with the general public, normal contact with coworkers, and then – with supervisors, up to 33 percent of the day. Maybe the extra breaks because of anxiety issues. So those are the facts. Could this person do any o the past work?
>
> A. No.
>
> Q. Could this person do other work in the economy?
>
> A. No.
>
> Q. And this – I should add, this person would have no exertional limitations.
>
> A. There's no change.
>
> (PageID.103–104.)

Because Dr. Andert was not a treating physician, the ALJ was not "under any special obligation to defer to [his] opinion[s] or to explain why he elected not to defer to [them]." *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011); *see Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010); *see also Perry ex rel. G.D. v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 426 (6th Cir. 2012). Rather the weight to be given the opinion is evaluated under the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). The ALJ is responsible for weighing conflicting medical opinions, not the court. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."); *accord White v. Comm'r of Soc. Sec.*, 572 F.3d at 284.

As noted above, the ALJ found that Dr. Andert's opinion was not entirely clear, and instead depended upon the opinion contained in the completed worksheet. According to the ALJ, this latter opinion "mentions everything that is supported based upon his expert opinion." In essence, the ALJ found that because the RFC worksheet did not contain any mention of the time Plaintiff would be off task, this "clarified" the doctor's speculative testimony. The Court disagrees. The completed worksheet consists of only twenty check-box questions. Notably, no question asked whether Plaintiff would require unscheduled breaks or otherwise be off task. It can hardly be said, therefore, that the time Plaintiff would be off task was "settled" based upon exhibit 14F, nor that it mentioned everything that was supported by the doctor's opinion. To the extent the ALJ depends on the fact that a time being off task was not included in the narrative at the end of the worksheet, such a determination is also not supported by the record. The worksheet's final question asked the

doctor to elaborate on the *preceding capacities*. Accordingly, here too, there is no indication that this narrative opinion contained everything that was supported based upon the expert's opinion.

The ALJ erred in one additional respect. The ALJ found that the evidence indicated Plaintiff was able to perform work requiring limited social contact, and then proceeded to find that this was "essentially" the same as a restriction for no-fast paced work. This appears to be an incorrect statement. The ALJ does not explain, nor is there supporting case law, how a restriction for social contact is "essentially the same" as a restriction for speed paced work. Indeed, if this were so, the ALJ's RFC determination allowing for no fast-paced work, after finding Plaintiff could only have occasional public contact, would have been an unnecessary duplicate finding.

With this in mind, the Court finds a further error, also identified by Plaintiff and unaddressed by the Commissioner. The ALJ gave great weight to Dr. Andert's completed RFC worksheet. On it, Dr. Andert stated Plaintiff was precluded from general public contact, and that contact with co-workers and supervisors was limited to only ten percent of the time or less. (PageID.564.) The ALJ did not explain why he did not adopt this portion of the opinion despite giving it great weight.

In short, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). On this record, the Court is unable to trace the path of the ALJ's reasoning. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).

Finally, Plaintiff asks for an award of benefits. While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if

11

"all essential factual issues have been resolved" and "the record adequately establishes [his] entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 644 (6th Cir. 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also Brooks*, 531 F. App'x at 644. Evaluation of Plaintiff's claim requires the resolution of certain factual disputes which this Court is neither competent nor authorized to undertake in the first instance. Moreover, there does not exist compelling evidence that Plaintiff is disabled. Accordingly, this matter must be remanded for further administrative action.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **VACATED** and the matter **REMANDED** for further factual findings including, but not necessarily limited to, further evaluation of Plaintiff's RFC and Dr. Andert's opinion.

A separate judgment shall issue.

Dated:  April 28, 2017                                                          /s/ Paul L. Maloney

                                                                                                PAUL L. MALONEY
                                                                                                 United States District Judge